IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>. Plaintiff,<br><br>vs.<br><br>JEROME LAWRENCE WIGMORE,<br><br>Defendant. | CR 18-36-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is Defendant Jerome Lawrence Wigmore's motion to suppress evidence seized inside his hotel room. (Doc. 28). A hearing was held on October 5, 2018. The Court heard testimony from Deputy United States Marshal David Wollschlager, Deputy United States Marshal Patrick Schally, Montana Probation Officer Laura McKee, Montana Probation Officer Jayson Baxter, and Gigi Guzman. After considering the facts and relevant law, the Court denies the motion.

I.  **Facts**

In August 2011, in Rosebud County, Wigmore was convicted and sentenced to prison for assaulting someone with a weapon. (Doc. 31-1 at 1-9). Due to the nature of his offense, Wigmore was required to register as a violent offender. (Doc. 31-1 at 7). Upon his release from prison in 2015, Wigmore began serving a

term of probation. (Doc. 33-3 at 6). As a condition of probation, Wigmore was subject to the following provision:

> Search of Person or Property: Upon reasonable suspicion, as ascertained by a Probation/Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, including my place of employment, without a warrant by a Probation/Parole Officer, ISP Officer or Law Enforcement Officer (at the direction of the Probation/Parole, ISP Officer). Any illegal property or contraband will be seized and may be destroyed.

(Doc. 33-2 at 1). On June 6, 2017, the Rosebud County Attorney filed a petition to revoke Wigmore's suspended suspense. (Doc. 33-3). The petition was based on his probation officer's report, which stated Wigmore (1) was arrested for driving without a license and fleeing from police after a traffic stop, (2) was being investigated for theft of a motor bike and possession and distribution of dangerous drugs, (3) tested positive for methamphetamine use, (4) failed to attend substance abuse treatment, (5) failed to attend mental health treatment, and (6) failed to take medication as prescribed. (Doc. 33-3 at 6-8). Wigmore subsequently stopped reporting to his probation officer and was placed on absconder status.

On November 13, 2017, Wigmore failed to appear for his hearing on the petition to revoke his probation. (Doc. 33-4 at 1). A bench warrant was issued for Wigmore's arrest. (Doc. 33-4 at 1). A few days later, Wigmore was charged with bail jumping and another arrest warrant was issued. Due to Wigmore's violent conviction, the warrants were referred to Montana's Violent Offender Task Force,

which is comprised of United States Marshals, local law enforcement, and probation officers.

Deputy United States Marshal David Wollschlager was assigned Wigmore's case. On January 3, 2018, Wollschlager received information through a tip line that Wigmore was residing in Billings, Montana, at the Big 5 Motel in Unit 103 G with his girlfriend, Gigi Guzman, who managed the motel. The tipster stated Wigmore possessed firearms and installed a surveillance system around the outside of Unit 103 G with a live feed inside the room. The tipster revealed herself to be the daughter of Guzman and provided contact information. She did not state how she knew the information.

Later on January 3, 2018, Wollschlager called the daughter. The daughter reiterated what she said in the initial tip. Wollschlager then called Guzman's other daughter. Guzman's other daughter corroborated what her sister said, but added that she had personally observed firearms in Unit 103 G.

On January 4, 2018, Wollschlager and his team conducted surveillance of the Big 5 Motel. Wollschlager observed Wigmore entering and exiting Unit 103 G. Because he'd been informed Wigmore may be armed and the unit may have surveillance cameras around it, Wollschlager thought it best to arrest Wigmore outside of the unit. Wollschlager and his team approached Wigmore while he was near a staircase, but before they could reach him, Wigmore entered Unit 103 G and

closed the door behind him. Wollschlager did not know if Wigmore had seen him or not. Wollschlager and his team approached Unit 103 G, knocked on the door, and stated "police with a warrant." Wollschlager spent about a minute knocking on the door.

Wollschlager observed a hidden surveillance camera pointed at his location and determined the team needed to breach the door quickly for safety purposes. The team tried repeatedly to breach the door with a battering ram but were unsuccessful because the door was fortified. Shortly thereafter, Wigmore could be heard yelling he was coming out. Wigmore exited Unit 103 G through a side door connected to the lobby, wearing only his underwear and a t-shirt. Wigmore was immediately handcuffed. Because it was winter, Wollschlager entered Unit 103 G to retrieve pants, shoes, and a jacket for Wigmore. Wollschlager conducted a protective sweep of the residence before locating Wigmore's clothes. Wollschlager did not observe any contraband during the protective sweep.

When Wollschlager emerged from Unit 103 G, Montana probation officer Jayson Baxter authorized a probation search of the unit. During the probation search, the team located two firearms inside a black case hidden from sight.

## II. Legal standard

Warrantless searches inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). An exception to the warrant requirement

exists in cases involving a probationer subject to a search condition. A warrantless search of a probationer's home does not violate the Fourth Amendment if, after evaluating the circumstances of the particular case, the Court determines the search was "reasonable." *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016). In doing so, the Court balances, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy, and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)). The probation search condition is "a salient circumstance" in the balancing of interests. *King*, 736 F.3d at 808 (citing *Knights*, 534 U.S. at 118). So, too, is the government's interest in protecting the public from probationer recidivism, discovering criminal activity, and a probationer's successful completion of probation. *King*, 736 F.3d at 809.

## III. Discussion

Wigmore argues the evidence should be suppressed for two reasons. First, Wigmore argues the protective sweep was illegal. Second, Wigmore argues the probation search was illegal. The Court does not address the first argument because no evidence or contraband was observed or seized during the protective sweep, and, as discussed below, the probation search was a valid search independent of the protective sweep.

To determine whether the probation search was reasonable, the Court must weigh Wigmore's privacy interests against the government's legitimate interests. *King*, 736 F.3d at 808.

On one side of the balance is Wigmore's privacy interest. Wigmore, as a probationer, has a higher privacy interest than that of a parolee, but a lower expectation of privacy than someone who has completed probation or who has never been convicted of a crime. *Lara*, 815 F.3d at 610 (citing *Samson v. California*, 547 U.S. 843, 850 (2006)). Wigmore's privacy interest is lower still than a non-violent probationer's because Wigmore is serving probation for a serious violent offense. *Lara*, 815 F.3d at 610. Thus, although his expectation of privacy is not insubstantial, it is significantly diminished. *Lara*, 815 F.3d at 610; *see also Knights*, 534 U.S. at 121.

Turning to Wigmore's search condition, the language permits a probation officer, or law enforcement at the direction of a probation officer, to conduct searches of his residence based on "reasonable suspicion." (Doc. 33-2 at 1). Although Wigmore's privacy interest is not determined solely by the search condition, the search condition's specific language is given considerable weight. *See King*, 736 F.3d at 810 (upholding suspicionless search of violent probationer subject to a suspicionless search condition); *Lara*, 815 F.3d at 610-11 (suspicionless search of cell phone conducted pursuant to suspicionless search

condition was not reasonable because condition did not specifically mention cell phones); *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (construing search condition to apply only to defendant's "residence" because of search condition's "clear and explicit language.") (overruled on other grounds).

On the other side of the balance is the government's legitimate interests in combating recidivism, discovering criminal activity, and the reintegration of probationers. *King*, 736 F.3d at 809. The strength of these interests depends on the degree to which the government has a specific reason to suspect that a probationer is reoffending or jeopardizing his reintegration into the community. *Lara*, 815 F.3d at 612. The more serious the allegation is, the more strength these interests have in justifying the search. *Lara*, 815 F.3d at 612 (contrasting the *Knights* and *King* probationers, who officers suspected of arson and homicide, respectively, from the *Lara* probationer, who had missed a meeting with his probation officer).

On the balance, the Court holds the search of Wigmore's residence was reasonable. First, Wigmore's violent probationer status, and the "reasonable suspicion" standard included in his search condition, significantly reduced his expectation of privacy. Second, the government's interest in searching his residence was particularly strong because the evidence indicated Wigmore was recidivating and endangering the community. When Baxter ordered the probation

search, the government knew Wigmore (1) was a violent felon convicted of assaulting someone with a weapon, (2) racked up multiple alleged probation violations, including a recent arrest for running away from the police, (3) was being investigated for theft and possession and distribution of methamphetamine, (4) absconded from probation, (5) jumped bail, and (6) refused to answer the door when law enforcement knocked and announced they had a warrant. Further, the government received tips from Guzman's daughters that Wigmore had firearms in the residence. The tips were fairly reliable because the daughters identified themselves, one of them personally observed the firearms, and Wollschlager corroborated parts of the tip, such as that Wigmore lived in Unit 103 G and installed surveillance around the unit. *See Florida v. J.L.*, 529 U.S. 266 (2000) (anonymity of informant); *United States v. Terry-Crespo*, 356 F.3d 1170 (9th Cir. 2004) (whether informant's knowledge was first-hand or second-hand); *Alabama v. White*, 496 U.S. 325 (1990) (independent police corroboration of information).

In short, the reliable information that Wigmore had guns in the residence and was recidivating overcomes Wigmore's expectation of privacy in his home as a violent probationer subject to a "reasonable suspicion" search condition. Therefore, the warrantless search of Wigmore's residence pursuant to his status as a violent probationer was reasonable under the Fourth Amendment.

## IV. Conclusion and order

Wigmore's motion to suppress (Doc. 28) is denied.

DATED this 10th day of October, 2018.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge